We frequently have district judges from within the circuit sit with us. I think it is good for all of us and we appreciate you being back with us again and I know you'll be back with us in the future. Thank you. We're familiar with your cases this at least portions of the record. So in the limited time that's available to you, you should feel free to get straight to the heart of your argument. And then we're going to have some questions in all probability. Please do not treat the red light as aspirational. When it shines, it's time to wrap up. Please do pay attention to it. And if you're answering a question from the court, feel free to finish your answer, but do be mindful of our time. So we will begin this morning with United States v. McCarty. Mr. Garland? Good morning. In my six minutes. And Whitman and McCarty, I should say. Good morning. In my six minutes, I have just a few points to make. My client's position is that he asserts I have a conflict of interest. He objects to me proceeding and wanted me to make his objection known because he claims he has the right to conflict-free counsel at this critical stage. He wants to be represented by a conflict-free lawyer, not me. Someone else objects to the process of me proceeding to represent him and not having a conflict-free lawyer. And accordingly, I renew the motions that this court's previously overruled, requesting stay and withdrawal. And that motion's denied again. Yes, it's on there. Secondly, I have reached an agreement to supplement the record, reached an agreement with the government under Appellate Rule 10e2. The charge itself that was requested was not in the record and with permission of the court, by stipulation, we are in agreement as to what that charge was. Okay. And you'll file the appropriate papers about that? Yes, we will. Thank you. That charge, which was not in the record, was fashioned based on the case of United States v. Sun Diamond Growers of California. And what it... So is this the lesser-included offense charge? That is. I am addressing the lesser-included offense charge. So let me tell you where I am on that, the problem I have with your argument, which I find to be, in some respects, a difficult issue. But it appears to me that at trial, the only defense that was presented was one that would have been exoneration on either the charge of bribery or the lesser-included about illegal gratuities. And that was that the defendant was a victim of extortion. That is correct. Our position is that the ability to argue that he was both extorted into a gratuity, this was a butter-up case. So the problem for me about the... So our case law says that if that was the defense at trial, then it's not an abuse of discretion to reject the lesser-included offense instruction. Because that would have been... If the jury was persuaded by the defense, that would have been a defense to either charge. The defense was presented five weeks in a lengthy trial. Throughout that trial, evidence was developed from both the prosecution and the defense cross-examination that would have given rise to my ability to argue in conclusion. The evidence is in the record of... I'll just use the term buttering up. But you never argued that, did you? No, I couldn't argue because I had no lesser-included charge on what a gratuity was. Had I had that charge, I would have argued to that jury. Well, I don't understand. Did you have the charge conference? Did you make the request before your final argument? Yes, yes, yes. And it was denied. The judge studied it over. But because it was a long trial, the record is filled with it. We've asserted. I could have argued right then. You see, ladies and gentlemen, it wasn't a bribe in this count. It was a gratuity. If that was the theory of your case, you would have presented evidence of that, right? In defending, you want to make sure the evidence is in the record, not necessarily that you present it. It was in the record. I could have argued it. And the jury, thinking about that, could have reached all kind of conclusions as it relates to it. I mean, they could have decided, well, maybe it's not bribery. Maybe it's a gratuity. And there's ample evidence throughout the record of the buttering up that's given the shortness of time. But Mr. Garland, couldn't you still, though, essentially, Judge Sands said, well, if that's true, the jury will acquit, you could have still, without a gratuity instruction, said, ladies and gentlemen, there was no quid pro quo. They were doing this. And buttering up is not a quid pro quo. You could have made that argument. And doesn't it, by arguing extortion, extortion almost by itself suggests you're conceding the quid pro quo, but you're looking for a defense. Well, you're saying we were extorted into what we did, whether it was a gratuity, whether it was whatever you wanted. So the basis of the extortion doesn't remove the defense that it's not a gratuity, it's not a bribe, or that the proof is insufficient. And I have the right to present the defense in closing, not to have to assert it or even say anything about it. So the idea that a defense, many times a defense, and I did this here in front of Judge O'Kelly and Judge Edenfield, arises from what the prosecution puts in, in most cases, seldom. So you take the case, so the fact that I wasn't saying it in opening, many times the best strategy is not to tell the prosecutor how are you going to defend the case. So the idea that it's not in the evidence, we would submit that it doesn't waive the argument. Okay, you have a minute saved for rebuttal. We'll hear now from Mr. Phelps. Good morning. Good morning. My breach of decorum was not intentional this morning. My wife called me on the way up and said I had left my pantsuit on the oven. So please, nothing intended. We would never have noticed if you hadn't told us. If I hadn't brought it up, maybe I shouldn't have done that. I had no idea. Okay. Tell your wife you're in a clear. All right. Even though I appreciate the fact that you have read over the facts in this extremely complicated conspiracy, there are a few that I'm going to go over because from Mr. McCarty's standpoint, they're very, very important. Mr. Whitman was the private trucker who engaged in these bribes of the main actors at the transportation office at the Marine Corps Logistics Base. And the main actors at the Marine Corps Logistics Base were, number one, Mr. Potts, who was the supervisor of the transportation section. And then at the time that this took place under him, you had a Mr. Philpott, who was the transportation lead person. Okay. And then on the very bottom of the totem pole, you have an individual who's a not very sophisticated man by the name of McCarty. And the issue here with regard to my client is simply the application of relevant conduct to the case and what is the scope of the criminality for which he is legally responsible for. As a result of the application of relevant conduct, my client is attributed to $17 million of loss. The impact on Chapter 2 of the guidelines is this ramps up the offense level into a way up there, like in the 20s. If you look at the indictment, however, you're going to see that Mr. McCarty was charged with line-by-line amounts for which he was convicted for, which is about half of the charges. I'm not suggesting that he's only responsible for the exact amounts in the indictment. I know relevant conduct doesn't work that way. Pardon make a individualized finding concerning the scope of the criminality undertaken by McCarty in particular. What occurred in this case was you had the supervisor and then the lead supervisor and McCarty, and all three of them acted independently. And I would like to especially point out something that I had actually missed, referring to page 78 of the appendix. Even the probation pre-sentence report, and I would quote, it is noted that McCarty, comma, acted independently of his co-workers at the base and was not taught or instructed by other employees as to the scheme. That's page 78 of the appendix. Where is that quote coming from? This is from the pre-sentence report, page 78 of my appendix, paragraph 27. This is the pre-sentence report that they did, document 215. Now, right from the beginning, as cited in my statement in the government's brief on page 33, McCarty, Phil Fott, and Potts all worked in the same physical office, sitting a few feet from each other. Not true. The evidence in the case is that Potts, the supervisor, as you would expect, had his own office. Phil Fott, after he became lead supervisor, had his own office. All the evidence in the case is that Whitman approached the men individually and all the evidences at first, Potts and Phil Fott didn't quite know what he was talking about, but then when they realized he was trying to bribe them, they began to have conversations behind closed doors, not surprisingly. There is no evidence anywhere in this record that McCarty, the defendant, participated in any acquiesced upon or agreed upon criminal activity with these other two. You know, isn't it true that when the investigators searched the office that Phil Fott and Potts agreed one of them needed to call McCarty and give him a heads up? Yes, that is true. And then at one of the meetings, McCarty said to Phil Fott, all they had on him was a four-wheeler and a Mustang. He wasn't going to prison for that. Phil Fott, Potts, and McCarty met several times after the investigation began. They met together, right? After the investigation. Right. Which would suggest everybody knew everybody was in this together, right? That's a reasonable inference the district court could have made. The question about this jointly undertaken activity, it appears to me, is really for us a clear error determination, right? Yes, I believe so. Yeah, so if there's evidence to support that finding, if the fact finder could reasonably infer that they jointly undertook the activity, it looks to me like you've got it here. Well, I don't agree that what they talked about after the investigation broke shows jointly criminal activity during... It doesn't necessarily lead to that Yeah, it's one reasonable inference, but I think... If it is, then you can't succeed under clear error review. I believe I'm out of time. Could I ask one question? Remind me, what offense level did you suggest to recommend to the court he should peg loss at sentencing? I don't have an exact offense level. Our offense level would be the offense level that would apply to the counts that he was found guilty with, which would be driven by about $100,000 of loss. $100,000 was where you pegged loss. Remind me also, did the judge vary or depart down at all for your client? I did not represent him. Whoever represented him. Right, right. The judge already did sentence him under the guidelines. The sentence was already lenient, but it wasn't as far down as we would urge. All right, thank you. Now, as far as what you were saying, Judge... You are out of time. Okay, I'm out of time. Mr. Robbins. Thank you, Your Honor. May it please the court, Alex Robbins appearing on behalf of the United States. With the court's permission at the outset, I wanted to address one thing that Mr. Whitman's counsel brought up on the definition of gratuities. Buttering up an official by itself in the abstract is not a gratuity. The statute at issue 18 U.S.C. 201C defines a gratuity as a payment to an official, not just because she's an official, but for or because of an official act. As opposed to the definition of bribery in 201B is payment to an official with intent to influence an official act. And those are a pretty fine line. And the way the Supreme Court distinguished the two in Sun Diamond was that the bribery payment with intent to influence an official act has a quid pro quo element to it. Whereas a payment to an official in 201C as a gratuity could simply be a reward or a thank you for some official act the person already took or had already agreed to undertake. So, you know, an official says, I'm going to build a clock tower. And someone in the business community says, thank you, here's $10,000. That's a gratuity. Just buttering someone up isn't. And so I think put in that context and then with that sort of backdrop, looking at the record here, there is no way on this record that the issue of gratuity ever arose at trial, not even implicitly in the course of cross-examination. As Judge Carnes pointed out, the defense was extortion. And extortion has implicit in it a quid pro quo element. It's just that in that context, the payments from the victim aren't corrupt because you're being extorted rather than... You are the victim if it's extortion. That's the argument. Correct. I mean, isn't the cleanest way to, when I look at this issue, you know, lesser included, something that's often argued that the government wants it. In some cases, the defendant would want it. I can imagine that the way this, a case of robbery would be charged and tried, there could really be an issue of a lesser included offense charge for these statutes. But I can also imagine that they'd be charged and tried in ways that doesn't raise that issue. But it seemed to me the easiest way to look at this was the only real argument met by the defense was the defendant was a victim of extortion. And if that's the defense, that's a defense that would apply to both kinds of charges. And for that reason, our case law says it's never, it's not an abuse of discretion in that circumstance not to give the lesser included. That's correct, Your Honor. I think Brown, Cornelia, the cases we cited stand for that proposition. And just to follow up on that, the test really is whether a defendant could be found guilty of the lesser offense instead of the greater offense. The question is not just, could the defendant be found guilty of the lesser offense? Well, sort of by definition, yes, if it's a lesser offense. The question is lesser offense as opposed to greater offense. And that's when the court looks at the record to determine and the district court in the first instance looks at the record that he just sat through and the trial he just sat through to see whether on the facts of the case and the evidence presented in the case, there's any way that the convict on the lesser offense, but not the greater, which is, again, this comes up on both sides, as Your Honor pointed out. That's why the standard of review here is abuse of discretion. This isn't an on the ground call for the district court to make based on how the case was argued and how the evidence came in. Now, I also would want to point out just so it's clear. It might mean this. So I understood your argument was this was kind of a last minute idea. It was raised kind of at the last minute. So how might it have been raised earlier? Well, the defense, as both the defense and the government submitted proposed jury instructions for the district court's local rules at the beginning before the trial started. The defense, presumably, if that was going to be an aspect of the defense, could have done so then. At the very least, if something happened during trial that made my colleague think that this is a theory he wanted to pursue, then he would have been in a position to research the issue and brief it and submit something to the district court in the middle trial to give the district court a heads up. This is ultimately the framework here is just it's a jury instruction. It has to be both legally correct and necessary under the facts of the case. And so as with any proposed jury instruction, timing is everything. You submit it when you think it might be an issue generally at the beginning of the case if it's going to be part of your theory. So the district court has a chance to rule on it and sort of take it carefully and change his mind if something comes up in the trial that would push him the other way. None of that happened here. We're not arguing plain error simply because the instruction was submitted literally at the charge conference right before the jury was instructed. Right. But I think that simply provides background for why the issue was not as well fleshed out as it might otherwise have been in the original case. I will say, as a former district judge, excuse me, I felt for the judge here because this is complicated. And you've got a jury, you've gotten instructions. If I'm the judge, I've been up the night before working on them and the jury's about to walk in and suddenly you're hit with this new thing. You're not just hit with it. Government's objecting to it and a defendant, a co-defendant. So what does the judge do? Is he going to sever the trial now? It's sort of a mess. And I recognize the rules appear to allow that sort of ambushing. But I don't know if in an abuse of discretion standard, when we've got all of this going on, whether or not we should consider that to be a factor as well. Yes, Your Honor. And for what it's worth, for what little it's worth coming from me, I think the district judge did it exactly correct. His first reaction was, why would you need this instruction? If you're not guilty, you're not guilty. But then he asked for at least some minimal briefing from the parties and quickly came around, applied the correct standard, and said that on this record there's little, if any, evidence of gratuities. And I think actually there was, he was giving a little too much credit to the defense. There was no evidence of gratuities. We searched the transcript for the word gratuities, reward, gift, and there's just nothing in the record at all from argument or fact that suggested that these payments were a thank you payment for something the officials had already done. They were payments going back and forth for years. At the same time, these $1,000 payments, cash envelopes were being given to officials. The officials are steering $10,000 or more construction, trucking contracts to Mr. Whitman. This is a stream of benefits in both directions, interlocking. They're about as quid pro quo as you can get. And I think the district court understood that and correctly ruled in this case that that instruction was not necessary. You want to move on to jointly undertaken activity? Yes, Your Honor. I think Your Honor put the issue pretty well. The standard review here is clear error. The district court was faced with a record of three co-defendants, co-schemers. They weren't charged as conspirators, but co-schemers who as soon as they got caught, Mr. Philpott thought to call Mr. McCarty. They met repeatedly afterwards, which does shine light on what their rent together. In fact, Mr. McCarty, as we pointed out in our brief, was actually a conduit for some of the bribe payments because Whitman was paying McCarty to do work on Philpott's house. Right. And so at the very least, McCarty knew that those payments were being made from Whitman to McCarty. And when we said in our brief that they're working a few feet from each other, I think there's, I don't remember the exhibit off the top of my head, there's actually an exhibit with a map of the office in the record that was shown to the jury. It's not a big office. It's sort of a central area where everyone's sitting next to each other and the supervisors have offices up on the side. So Potts had his own office, but he was physically down there. I mean, the only way to get out is your walk. It sounds like they had lunch together from time to time. They had lunch together on Mr. Whitman's dime. Yeah, on Mr. Whitman's dime. Yeah. These were not large, distant offices from each other. These people were working closely together. They were using each other's codes in the computer system. They all knew about each other's work product, and they all testified that they didn't know the exact details of the arrangements that Mr. Whitman had with everybody else, but they knew they were in it together. And the district court, at the very least, reasonably said that. Could reasonably infer that. Could reasonably infer that from the facts of the case, Your Honor. And that's exactly what the district court did. I think my opposing counsel mentioned, I believe for the first time when he was up at the podium, that there was no specific finding by the district court, which is not the argument he ran in his brief, which was the district court committed clear error. If that's an argument he's making, I would direct the court to page five to six of document 189, which is the forfeiture hearing where the district court finds on the record that there was a single scheme. The district court then incorporated that assumption finding as a background later on in the sentencing proceeding. Did the district court, what did the district court say as to its reasons for downwardly departing or veering? Did it offer any reasons? You know, Your Honor, I don't recall. I believe the district court, my general recollection is the district court recalled that Mr. McCarty was a less culpable, less involved overall in the entire scheme than Mr. Whitman. And I think personally made less money out of it. The district court did very downward substantially because the fraud loss amounts were almost the McCarty was a member of the scheme for most of the time. So in terms of loss amount, they're going to be pretty close. And he's also a public official. So he has the enhancement for that. So Mr. Whitman got 22 years. Mr. McCarty got 10 years. It was a very substantial downward departure in this case or variance in this case. The court has no further questions. Thank you, Mr. Robbins. Thank you. Mr. Garland, you've got a minute. I have an answer to Judge Karn's question about could I have just argued it. The jury was entitled to know and should have known that gratuity was a crime. The charge would have pointed that out and said you can find him guilty of paying a gratuity as an unlawful gratuity. But for me, just to argue, the jury would be sitting there thinking, well, he's going to walk Scott free. The argument, they needed to know it was a crime. They needed to know the distinction. And I rely heavily on the Jamison case, the sites in the brief. In that very case, a government inspector, the theory was that they were keeping him happy. How did they keep him happy? They gave him a tractor. They gave him a huge discount on another tractor. And they did home improvements. That is completely parallel. It was so obvious, Mr. Garland, why he submitted one or two sets of proposed instructions before this issue was raised, right? I submitted, I submitted this. Judge Sands took time, stopped. I know, but how many times did you submit proposals without this suggestion of a lesser included offense for gratuity? I'm sure several times. But what I do want to say is Judge Sands took a lot of time. He had set up the process that we could continue to submit. We had been working on the charge for some time. He received it. He handed a copy to the prosecutor. I know I'm out of time, Your Honor. Thank you, Mr. Garland. We have your case. Mr. Phelps. Thank you. As far as the standard of review is concerned, I believe it may be a little bit more scrutinizing than what you're suggesting. I cited U.S. v. Isaacson in my brief. The district court must make individualized findings concerning the scope of criminal activity. In Isaacson, we had sort of a similar situation involving a fraud case where you had a defendant who was defrauding auditors instead of defrauding investors. In other words, this particular defendant had more of an independent part of the conspiracy and the Eleventh Circuit remanded the case for resentencing. I don't believe this standard review is as amorphous as you would suggest it is. The judge made the sentencing, not the jury. I think that the judge still has to follow the case law. Although Judge Sands, I've seen this quite a few times and he's a very good judge, I think paying lip service just saying you're making an individualized assessment isn't making an individualized assessment. Once again, Judge, it's our position that after all three of these knew that after the raid of the stations and computers shows that they knew that all of them were being prosecuted, it doesn't show that they had a jointly conducted . . . You can make that argument, but you could reasonably infer otherwise. Yeah, I understand that, Judge, but I think those are the kind of things that should have been included in the district court's finding. I think there would be more obligation than that. Thank you. Thank you. We have your case and we'll move on to the next.